IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
                                                        :
ALBERT LEE, JR.,                                        :  CASE NO. 1:10-CV-00151
                                    Plaintiff,          :
                                                        :
         -vs-                                           :
                                                        :
LEE LUCAS, et al.,                                      :  MEMORANDUM OF OPINION AND
                                                        :  ORDER GRANTING DEFENDANTS'
                                    Defendants.         :  MOTIONS TO DISMISS IN PART
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 21 January 2010, Plaintiff Albert Lee Jr. brought the instant action against the following Defendants: Drug Enforcement Agents ("DEA") Lee Lucas and Robert Cross; Richland County; Richland County Sheriff's Officers Charles Metcalf, Matt Mayer, and Larry Faith; Thomas Verhiley; City of Cleveland; Cleveland Police Officer Jamal Ansari; and unknown DEA Agents and Richland County Sheriff's Officers.[1] (Docket #1).  Mr. Lee's Complaint alleges against the above-named Defendants constitutional violations under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, conspiracies to commit these constitutional violations, and state law claims of malicious prosecution, false imprisonment and arrest, intentional infliction of emotional distress, and conspiracy. (Docket #1).  Further, Mr. Lee's Complaint alleges a state law 'failure to train' claim against Richland County and the City of Cleveland.

---

[1]Mr. Lee asserts these claims against the above-named personal Defendants in both their official and individual capacities.

Pending before the Court are the following Motions: (1) Defendants City of Cleveland and Jamaal Ansari's Motion to Dismiss (Docket #19); (2) Defendant Lee Lucas' Motion to Dismiss (Docket #22); (3) Defendants Robert Cross and Thomas Verhiley's Motion to Dismiss or in the alternative Motion for Summary Judgment (Docket #27); (4) Defendants Richland County Sheriff's Office, Matt Mayer, and Larry Faith's Motion to Dismiss or in the alternative Motion for Summary Judgment (Docket #42); and (5) Defendant Charles Metcalf's Motion for Judgment on the Pleadings (Docket #43).

These Motions in totality argue that: 1) the City of Cleveland is entitled to statutory immunity from Mr. Lee's state law 'failure to train' claim; 2) Mr. Lee's constitutional claims are time-barred under their applicable statutes of limitations; 3) Mr. Lee's state law claims of malicious prosecution, conspiracy, false imprisonment and arrest, and intentional infliction of emotional distress are time-barred by their applicable statutes of limitations; 4) Mr. Lee's Complaint fails to state any claim upon which relief can be granted and therefore must be dismissed under 12(b)(6); and 5) Mr. Lee's Complaint must be dismissed because each of his claims is barred by the doctrine of judicial estoppel.

This Court will analyze, as threshold matters, the questions of statutory immunity and whether Mr. Lee's claims are time-barred under their applicable statutes of limitations.  Because the City of Cleveland and Richland County are entitled to statutory immunity under O.R.C. Chapter 2744 from Mr. Lee's state law 'failure to train' claim, that claim will be dismissed.  Further, because this Court will conclude that Mr. Lee's remaining state law claims and his Section 1983/<u>Bivens</u> false imprisonment and

2

applicable conspiracy claim are time-barred by their statutes of limitations, these claims will therefore be dismissed.

Mr. Lee's remaining claims are a Fourth Amendment unlawful detention claim, Fifth and Fourteenth Amendment due process claims, and applicable federal conspiracy claims.  These claims are all brought against the above-named Defendants in an individual capacity under Bivens and Section 1983.[2]  This Court will analyze these claims under the pleading standards set forth in Fed.R.Civ.P. 8(a)(2) and the United States Supreme Court cases of Iqbal and Twombly.  Mr. Lee sufficiently pled these claims, which therefore withstand the Defendants' motions to dismiss under 12(b)(6).

Last, this Court will analyze whether Mr. Lee's remaining claims are barred by the doctrine of judicial estoppel.  Because this doctrine does not apply to the present case, Mr. Lee's Section 1983 and Bivens due process, unlawful detention, and applicable conspiracy claims will not be dismissed.

**I.      The City of Cleveland and Richland County Are Statutorily Immune from Mr. Lee's 'Failure to Train' State Law Claim.**

The Ohio Supreme Court noted in Wilson v. Stark County Department of Human Services, 639 N.E.2d 105, 107 (Ohio 1994), that "[p]olitical subdivisions are shielded from civil liability as provided by R[evised] C[ode] Chapter 2744.  [That chapter] creates a broad immunity, subject to enumerated exceptions."  Although there are exceptions to

---

[2]Because the state law 'failure to train' claim against Richland County and the City of Cleveland will be dismissed, there are no remaining claims against these entities.

3

the immunity of political subdivisions for injuries caused by the negligent acts of employees performing proprietary functions, "[t]here is, however, no such general exception for governmental functions." Id. The rule of interpretation in Ohio is that "[i]f none of the exceptions to immunity apply, the political subdivision is immune from suit." Wynn v. Butler County Sheriff's Dept.,1999 WL 160942, at *2 (Ohio Ct. App.1999).

Here, there is no question that the training of police officers falls within the definition of a governmental function. McCloud v. Nimmer, 72 Ohio App.3d 533, 536-38 (Ohio Ct. App. 1991). Furthermore, none of the exceptions to immunity apply under O.R.C. Chapter 2744. Therefore, the City of Cleveland and Richland County are immune from Mr. Lee's state law 'failure to train' claim, which therefore will be dismissed.

### II. Mr. Lee's Constitutional Claims and Their Applicable Statutes of Limitations.

*A. This Court must first discern what specific constitutional claims Mr. Lee has asserted in his Complaint before determining if his claims' limitations' periods have run.*

A plaintiff cannot simply assert that he or she has been constitutionally wronged by a defendant, allege facts to support this assertion, and bring suit under Section 1983 and/or Bivens. Although Section 1983/Bivens is the proper vehicle under which to bring a constitutional claim, a plaintiff must allege *cognizable* constitutional injuries. In the present case, Mr. Lee has alleged two cognizable constitutional violations under the Fourth Amendment, one under the Fifth Amendment, one under the Fourteenth

4

Amendment, and none under the Sixth or Eighth Amendment.  Indeed, Mr. Lee's Complaint states:

> As a result of the aforementioned wrongful conduct [(withholding exculpatory evidence from the prosecution and fabricating inculpatory evidence)], Plaintiff was wrongfully arrested, indicted, and incarcerated for over two years.  Also as a result of the above described wrongful conduct, Plaintiff was further subjected to unlawful searches and seizures. Plaintiff suffered substantial damages as a result of wrongful arrest and imprisonment. (Compl. ¶23-25).

This Court discerns from the above paragraphs that Mr. Lee has alleged the claims of false imprisonment/arrest[3] and unlawful detention[4] under the Fourth Amendment and a due process violation, contesting the fairness of his prosecution, under the Fifth and Fourteenth Amendments.  Mr. Lee alleges that he was arrested and detained without probable cause (false imprisonment/arrest), was convicted because DEA agents and police officers withheld evidence from the prosecution (due process violation), and remained incarcerated because these same officers and agents concealed their unlawful activities (unlawful detention).

---

[3]False arrest and false imprisonment overlap; the former is a species of the latter.  False imprisonment consists of detention without legal process.  Wallace v. Kato, 549 U.S. 384 (2007).  Therefore, a false imprisonment/arrest ends when a victim becomes held pursuant to such process - "when, for example, he is bound over by a magistrate or arraigned on charges." Id. at 389.

[4]After a plaintiff is subject to legal process, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution.  The Sixth Circuit stated in Gregory v. City of Louisville, 444 F.3d 725, 749 (6th Cir. 2007), "[a]n investigative official had a duty . . . to refrain from engaging in acts which continued a person's detention without probable cause."  Further, the court remarked that, "traditional claims for malicious prosecution [should] be pursued and treated as Fourth Amendment violations when the gravamen of the complaint is continued detention without probable cause." Id.

5

>    B.   *Mr. Lee's due process claims under the Fifth and Fourteenth Amendments, unlawful detention claim under the Fourth Amendment, and applicable federal conspiracy claims are not barred by their statutes of limitations. Mr. Lee's Fourth Amendment false imprisonment/arrest and applicable federal conspiracy claim are barred and will be dismissed.*

In Wilson v. Garcia, 471 U.S. 261 (1985), the Supreme Court held that statutes of limitations for Section 1983 actions are borrowed from state law, but that the question of how to characterize Section 1983 actions to determine the most analogous state statute of limitations is a question of federal law. The Wilson Court determined that the proper limitations period for a Section 1983 action is the limitations period for personal injury actions in the state in which the Section 1983 claim arises. In Owens v. Okure, 488 U.S. 235 (1989), the Supreme Court further clarified that when a state has multiple statutes of limitations for different categories of personal injury actions, the residual personal injury statute of limitations applies. Following Wilson and Owens, the Sixth Circuit decided that the limitations period for Section 1983 actions arising in Ohio is the two-year period found in O.R.C. Section 2305.10. Browning v. Pendleton, 869 F.2d 989 (6th Cir.1989). Therefore, the statute of limitations for Mr. Lee's Section 1983 claims is two years.[5]

Further, the question of when these limitations periods begin to run is a question of federal law. See Wallace v. Kato, 549 U.S. 384 (2007). The Supreme Court of the United States in Kato stated: "Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends . . . [A] false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is

---

[5] Constitutional claims under Bivens follow the same statute of limitations' rules as constitutional claims under Section 1983.

6

bound over by a magistrate or arraigned on charges." Id. at 389. Further, the limitations periods begin to run against an action for unlawful detention brought under the Fourth Amendment and a due process claim brought under the Fifth and Fourteenth Amendments when the prosecution has terminated in the plaintiff's favor.[6] Last, this Court must determine when the limitations period begins to run against Mr. Lee's Section 1983/Bivens actions for conspiracy. A conspiracy claim cannot stand alone; rather, a plaintiff must allege a conspiracy to violate his or her specific rights. Therefore, the limitations period begins to run against a conspiracy action when the limitations period for the underlying claims begin to run.

In the present case, Mr. Lee has alleged conspiracies to unlawfully detain and falsely imprison him under the Fourth Amendment and violate his due process rights under the Fifth and Fourteenth Amendments. When these conspiracies' limitations periods begin to run is governed by the above analysis for each individual constitutional claim. Mr. Lee was arraigned in 2005 and thus became held pursuant to legal process on this date. Because Mr. Lee brought his Complaint in January of 2010, well over two years after his arraignment, his false imprisonment/arrest and applicable conspiracy claims are time-barred and will be dismissed. However, Mr. Lee brought his Complaint less than two years after he was released from prison in February of 2008 when the prosecution was terminated in his favor. Therefore, Mr. Lee's unlawful detention, due process, and applicable conspiracy claims are not time-barred.

---

[6]"[The Plaintiff's] § 1983 due process claim essentially contests the fairness of his prosecution. It is thus similar to his malicious prosecution claim, and claims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor." Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009).

7

### III. Mr. Lee's Remaining State Law Claims Are Time-Barred by Their Applicable Statutes of Limitations.

*A. Mr. Lee's Malicious Prosecution Claim is Time-Barred.*

The statute of limitations for "malicious prosecution…shall be commenced within one year after the cause of action accrue[s]." O.R.C. § 2305.11(A). The malicious prosecution cause of action accrues at the termination of the prosecution in favor of the accused. Froehlich v. Ohio Dept. of Mental Health, 114 Ohio St.3d 286, 289 (Ohio 2007). In the present case, the cause of action accrued when Judge Adams dismissed the charges against Mr. Lee on 6 February 2008. (Docket #27, Exhibit: 7). Mr. Lee filed this lawsuit against the Defendants on 22 January 2010; over eleven months after the statute of limitations had run. Therefore, Mr. Lee is barred from bringing his malicious prosecution claim, which, therefore, will be dismissed.

*B. Mr. Lee's False Arrest and False Imprisonment Claims are Time-Barred.*

The statutes of limitations for false arrest and false imprisonment shall be commenced within one year after their causes of action accrue. O.R.C. § 2305.11(A). The false arrest and false imprisonment causes of action accrue when a plaintiff is arrested and arraigned. Mr. Lee was arrested and arraigned in 2005. Therefore, the one-year statute of limitations period for both of these claims ran well before Mr. Lee filed this case on 22 January 2010. Mr. Lee is barred from bringing his state law claims of false imprisonment and arrest, which therefore, will be dismissed.

*C. Mr. Lee's Claim of Intentional Infliction of Emotional Distress is Time-Barred.*

The statute of limitations for intentional infliction of emotional distress varies in Ohio, depending on the underlying claims in the complaint. Typically, the statute of

8

limitations for a claim of intentional infliction of emotional distress is four years.  Crist v. Pugin, 2008 WL 2571229, at *1-2 (N.D. Ohio 2008).  However, when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress."  Id.  For example, the Crist court determined that a one-year statute of limitations applied to plaintiff's claim of intentional infliction of emotional distress because it was based on his false arrest/false imprisonment.  Id.  However, "certain claims, although susceptible to a conventional cause of action in tort, can be based upon facts so extreme in character that they not only establish the conventional tort, but constitute intentional conduct which is 'extreme and outrageous' as well."  Presti v. Ahrens, 1988 WL 122934, at *7 (Ohio Ct. App. 1988).  In these cases, the statute of limitations for intentional infliction of emotional distress is the full four-year period.  Id.

In the present case, Mr. Lee's claim of intentional infliction of emotional distress is grounded in the conventional tort of false arrest/imprisonment.  (Response, pg. 13; Docket #23).  At the same time, the alleged facts underlying this conventional tort are anything but 'conventional.'  Indeed, Mr. Lee alleges a *secret* conspiracy between police officers and DEA agents to convict him of crimes he did not commit.  To that effect, these conspirators allegedly hid exculpatory evidence, fabricated inculpatory evidence, and misled prosecutors.  Mr. Lee's claim is, in fact, based upon facts so extreme in character that they themselves constitute extreme and outrageous conduct.  Therefore, the statute of limitations for Mr. Lee's claim is four years.

There remains the question, however, of when Mr. Lee's intentional infliction of emotional distress cause of action accrued.  If it accrued when his conviction was

9

vacated, then Mr. Lee brought his complaint well before the four-year limitations period ran. If it accrued when he was arrested or arraigned, then his claim is time-barred. Mr. Lee has stated to this Court that his intentional infliction of emotional distress claim originated in his false imprisonment. Id. Stated another way, his alleged false imprisonment caused his emotional distress. Therefore, both torts accrued at the same point in time – when Mr. Lee was arraigned. Because Mr. Lee was arraigned in 2005 and brought his complaint in 2010, his claim for intentional infliction of emotional distress is time-barred and will be dismissed.

*D. Mr. Lee's State Law Conspiracy Claim is Time-Barred*

A claim for conspiracy cannot be made a subject of a civil action unless something is done which, in the absence of the conspiracy allegation, would give rise to an independent cause of action. Katz v. Banniny, 84 Ohio App.3d 543, 552 (Ohio Ct. App.1992). Thus, the statute of limitations for the underlying cause of action applies to the civil conspiracy charge. Because all of Mr. Lee's underlying state law causes of action are barred by their applicable statutes of limitations, so too is Mr. Lee's conspiracy claim. Cully v. St. Augustine Manor, 1995 WL 237129 (Ohio Ct. App. 1995).

**IV. Mr. Lee's Remaining Claims Withstand Defendants' Motions to Dismiss under 12(b)(6).**

The Court's task, in addressing a Rule 12(b)(6) motion, is to "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Ashcroft v. Iqbal,129 S.Ct.1937, 1951 (2009). Pursuant to this standard, a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although the complaint need not contain "detailed factual allegations," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), Rule 8(a)(2) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949. As the Supreme Court explained in Iqbal: "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. Following Twombly and Iqbal, it is well settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Applying the above analysis to the present case, this Court finds that Mr. Lee's Fourth Amendment unlawful detention claim, Fifth and Fourteenth Amendment due

11

process claims, and applicable conspiracy claims meet the requirements of Iqbal and Twombly.[7, 8]

The Complaint first alleges that the Defendants directed their informant, Jerrell Bray, to fabricate evidence: "Acting under the direction of Defendants in this case, Mr. Bray began fabricating evidence of alleged drug buys involving the Plaintiffs in an effort to implicate them in an alleged drug conspiracy."  (Compl. ¶15).  The Complaint does not rest on this arguably conclusary allegation, but rather specifies how the Defendants fabricated evidence: "In or about May 2007, Mr. Bray admitted that he, in concert with and at the direction of Defendants, used third-party stand-ins to stage drug buys, helped manipulate recordings, and otherwise fabricated evidence in an effort to arrest and prosecute innocent persons."  (Compl. ¶16).

The Complaint further alleges that the Defendants attempted to falsely convict Mr. Lee:

> In order to build a false case against the Plaintiff, the Defendants knowingly used fabricated evidence developed by Mr. Bray, otherwise fabricated evidence that falsely implicated Plaintiff, and

---

[7]To the extent that Mr. Lee alleged a federal 'failure to train' claim, this claim fails under Iqbal and Twombly. The Complaint states:"The widespread practices described in the preceding paragraphs were allowed to flourish because . . . the City of Cleveland declined to implement sufficient training and/or any legitimate mechanisms for oversight or punishment." (Compl. ¶34).  This statement is not specific, but rather conclusory.  Furthermore, there are no facts alleged.  All Mr. Lee has done here is *generally* delineate the outer contours of what a 'failure to train' must look like in all cases.

[8]As mentioned before, the Defendants in this suit are sued in both their individual and official capacities.  Mr. Lee has failed to adequately state a federal 'failure to train' claim against Richland County, the City of Cleveland, or any other entity.  Therefore, Mr. Lee has failed to establish the existence of customs or policies necessary to any official capacity lawsuit.  Mr. Lee's remaining claims, therefore, are all in an individual capacity. See Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978).

>destroyed and/or otherwise withheld from prosecutors and from Plaintiff evidence that would have helped exonerate [him]. In an effort to indict and imprison Plaintiff for crimes he did not commit, the Defendants, acting personally, as well by and through conspiracy with others, manipulated and coached witnesses, including Mr. Bray, and then withheld from the prosecutors and Plaintiff how they had done so. (Compl. ¶17,18).

These paragraphs specify in sufficient factual detail *how* the Defendants allegedly attempted to falsely implicate and convict Mr. Lee. The allegations that the Defendants manipulated and coached specific witnesses, fabricated evidence (described in detail in the preceding paragraphs), and withheld these actions from the prosecutors in Mr. Lee's criminal case are *not* mere conclusions.

Looking at Mr. Lee's Complaint as a whole, it does not merely offer labels and conclusions or formulaic recitations of the elements of these causes of action, but rather provides specific details about *how* the Defendants unlawfully detained Mr. Lee under the Fourth Amendment, violated his due process rights under the Fifth and Fourteenth Amendments, and conspired to do the same.

The Defendants contend, however, that Mr. Lee's Complaint suffers from fatal defects. This Court will address several of these objections in the paragraphs below.

The Defendants contend that Mr. Lee's Complaint fails to specify which of the Defendants bears responsibility for the alleged state and constitutional law violations. (Docket # 27, pg. 10). However, a plain reading of the Complaint shows this to be otherwise. The Complaint alleges repeatedly that "the Defendants" bear responsibility for the listed allegations. (Compl. ¶15-20, 26-28, 30). This collective reference has only one possible meaning - that all of the Defendants are responsible for the alleged state and constitutional law violations. It is true that the Complaint, at times, refers to certain

13

individual defendants and that some of these references do not state claims which can withstand Iqbal and Twombly. However, Mr. Lee undoubtedly did not attempt to state a claim when he stated that "Defendant Cross and Defendant Verhiley . . . are employed, respectively, by the DEA and the Ohio Bureau of Criminal Identification and Investigation." (Compl. ¶8). These references do not detract from the legal sufficiency of the allegations directed at the Defendants *collectively.*

Further, and relatedly, the Defendants contend that Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986), and Terrance v. Northville Regional Psychiatric Hospital, 286 F.3d 834, 842 (6th Cir. 2002), show that collective attribution is improper and renders Mr. Lee's Complaint insufficient under Iqbal and Twombly. However, these cases stand for a different proposition entirely, namely that a complaint must show what each defendant did to violate the constitutional right at issue. Mr. Lee's Complaint easily meets this standard by ascribing responsibility to all of the Defendants for each levied accusation. Any other reading of Chapman and Terrance leads to the unwieldy result where Mr. Lee must list each individual defendant's name every time he wishes to accuse all of them of the same unlawful conduct. This Court is not the first to adopt such reasoning. Indeed, the court in Brooks remarked that the plaintiff adequately pled "personal involvement, because he specifie[d] that he is directing this allegation at all of the defendants." Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009).

Moreover, the Defendants essentially argue that a complaint's specificity requirements change based on a plaintiff's knowledge of the events in question. Because "Mr. Lee has been provided with extensive discovery from the criminal prosecution of DEA Special Agent Lee Lucas," the Defendants assert that this Court

should expect more from his Complaint than what would otherwise be required. (Docket #47, pg. 1). To the extent this is a valid legal argument (Defendants offer no support for this proposition), the Court must note that an equally valid notice argument supports the factual sufficiency of Mr. Lee's complaint. These same Defendants have been defendants in nearly identical cases to the present one and therefore, should be on notice of what Mr. Lee's Complaint is alleging. See Brown v. Metcalf, 366 Fed.Appx. 621 (6th Cir. 2010); Westerfield v. United States, 366 Fed.Appx. 614 (6th Cir. 2010). Notice plays an important constitutional role in the 12(b)(6) analysis. Therefore, the Defendants' past involvement in near-identical cases should more than compensate for the alleged deficiencies in Mr. Lee's Complaint.

The Court finds that Mr. Lee's Complaint meets the requirements of Iqbal and Twombly and states claims upon which relief can be granted.

**V.     The Doctrine of Judicial Estoppel Does Not Bar Mr. Lee's Claims.**

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 (2000). Courts uniformly recognize that the purpose of the judicial estoppel doctrine is "to protect the integrity of the judicial process." Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982).

Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." New Hampshire v. Maine, 532 U.S. 742 (2001). Nevertheless, several factors typically inform a court's decision whether to apply the doctrine in a particular

15

case. Indeed, the Sixth Circuit in United States v. Hammon, 277 Fed.Appx. 560, 566 (6th Cir. 2008) stated:

> Judicial estoppel is . . . generally limited to circumstances where a party asserts a position in litigation that is adopted by the court, gains an advantage through that assertion, and then attempts to assert a clearly opposite position in a later proceeding.

In the present case, the Defendants claim the doctrine of judicial estoppel prevents Mr. Lee from bringing his Complaint. Specifically, the Defendants claim that Mr. Lee has taken positions in prior judicial proceedings which are inconsistent with the factual assertions in his Complaint. (Docket #22, pg. 3). Defendants' claim fails because judicial estoppel does not apply to the present case.

The Defendants contend that Mr. Lee could not possibly have been "unfairly set up," as he states in the Complaint, if he is actually guilty of the crimes for which he was "unfairly set up." Id. at 9. The Defendants contend that because Mr. Lee testified at Defendant Lucas' criminal trial that he is guilty of these crimes, he is playing "fast and loose" with this Court. Id. Even if this were true, this is not enough to invoke the doctrine of judicial estoppel. As evidenced by Mr. Lucas' acquittal, Mr. Lee never succeeded in persuading the court in Mr. Lucas' trial to accept his testimony. Indeed, "[j]udicial estoppel does not bar a party from contradicting itself, but from contradicting a court's determination that was based on that party's position." Teledyne Industries, Inc. v. N.L.R.B., 911 F.2d 1214, 1218 (6th Cir. 1990).

Further, the Defendants contend that because Mr. Lee pled guilty in his own criminal trial, he succeeded in persuading that court of certain positions, which are inconsistent with his Complaint. (Docket #48, pg. 3). Even assuming this is so, Mr.

16

Lee's Complaint is not judicially estopped.  Mr. Lee did not derive a benefit from pleading guilty at his criminal trial because in exchange for his plea deal he received a *prison term.*  The Defendants argue that if Mr. Lee had not pled guilty, then he would not have received a three step reduction in his offense level, and that this constitutes a benefit.  (Docket #34, pg. 6).  However, this reasoning assumes he would have been worse off going to trial.  In light of Mr. Lee's release from prison after Judge Adams dismissed the charges against him, this is not a valid assumption.

The doctrine of judicial estoppel does not bar Mr. Lee's claims.  Therefore, Mr. Lee's remaining due process claims under the Fifth and Fourteenth Amendments, unlawful detention claim under the Fourth Amendment, and applicable conspiracy claims will not be dismissed.

**VI.    SUMMARY**

The City of Cleveland and Richland County are statutorily immune under O.R.C. Chapter 2744 from Mr. Lee's state law 'failure to train' claim.  Therefore, this claim will be dismissed.  Further, Mr. Lee's remaining state law claims and his Section 1983/<u>Bivens</u> false imprisonment and applicable conspiracy claim are time-barred by their statutes of limitations.  These claims will be dismissed.

Mr. Lee's remaining claims are a Fourth Amendment unlawful detention claim, Fifth and Fourteenth Amendment due process claims, and the applicable federal conspiracy claims.  These claims are all individual capacity suits brought under Section 1983 and <u>Bivens</u>.  Mr. Lee sufficiently pled these claims, which therefore withstand the

Defendants' motions to dismiss under 12(b)(6).

Last, Mr. Lee's remaining claims are not barred by the doctrine of judicial estoppel.  As set forth above, this doctrine does not apply to the present case.  Therefore, Mr. Lee's Section 1983 and Bivens due process, unlawful detention, and applicable conspiracy claims will not be dismissed.

**VII.   CONCLUSION**

For the reasons set forth above, this Court grants the Defendants' Motions to Dismiss in part.  Mr. Lee's state law claims and Fourth Amendment unlawful imprisonment/arrest claim are hereby dismissed.

The Court denies the Defendants' Motions to Dismiss in part.  Mr. Lee's Fourth Amendment unlawful detention claim, Fifth and Fourteenth Amendment due process claims, and applicable conspiracy claims are not dismissed.  This case will proceed on these claims.


IT IS SO ORDERED.


/s/ Lesley Wells
UNITED STATES DISTRICT JUDGE